IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

JEREMY BLANKENSHIP,                )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        CIVIL ACTION NO. 5:07-00685
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
        Defendant.                 )

MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 40 - 433, 1381-

1383f. This case is presently pending before the Court on the Plaintiff's Motion for Summary

Judgment (Document No. 14.) and Defendant's Motion for Judgment on the Pleadings. (Document

No. 15.) Both parties have consented in writing to a decision by the United States Magistrate Judge.

(Document Nos. 4 and 5.)

The Plaintiff, Jeremy Blankenship (hereinafter referred to as "Claimant"), filed applications

for DIB and SSI on January 9, 2006 (protective filing date), alleging disability as of December 21,

2005, due to a broken left arm and prior problems from a gunshot wound to the left arm. (Tr. at 97-

99, 108, 112, 172, 184-86.) The claim was denied initially and upon reconsideration. (Tr. at 46-48,

50-52, 172-74, 177-79.) On September 20, 2006, Claimant requested a hearing before an

Administrative Law Judge (ALJ). (Tr. at 40.) The hearing was held on February 7, 2007, before the

Honorable Harry C. Taylor. (Tr. at 188-204.) By decision dated March 14, 2007, the ALJ

determined that Claimant was not entitled to benefits. (Tr. at 11-18.) The ALJ's decision became the final decision of the Commissioner on October 5, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 4-6.) On October 30, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2006). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain

2

v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2006). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from residuals of left mid shaft humerus fracture, which was a severe impairment. (Tr. at 14, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for work at the medium level of exertion, with the following limitations:

> The claimant can occasionally climb ladders, ropes, and scaffolds and balance. He is limited in the ability to reach in all directions with his left upper extremity. The claimant should avoid concentrated exposure to vibration.

(Tr. at 14, Finding No. 5.) At step four, the ALJ found that Claimant could return to his past relevant work as a telemarketer (telephone solicitor). (Tr. at 17, Finding No. 6.) On this basis, benefits were denied. (Tr. at 17-18, Finding No. 7.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

3

defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on January 19, 1976, and was 31 years old at the time of the administrative hearing, February 7, 2007. (Tr. at 97, 184, 191.) Claimant had a high school education. (Tr. at 118, 192.) In the past, he worked as a laborer, cable installer, telemarketer, sandblaster, and pizza deliverer. (Tr. at 113-14, 143-49, 192-94.)

 The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in (1) assessing Claimant's pain and credibility, (2) failing to develop the

4

record properly, and (3) relying upon only part of the evidence of record. (Document No. 14 at 8-12.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 15 at 5-9.)

1. Pain and Credibility.

Claimant first alleges that the ALJ improperly evaluated his subjective complaints of pain and other symptoms and erred in finding Claimant not entirely credible. (Document No. 14 at 8-9, 10-11.) Claimant alleges that the ALJ improperly found Claimant totally incredible because his allegations of extreme limitations and chronic pain were not supported by the objective findings of record, despite Claimant's lack of medical insurance. (Id. at 11.) The Commissioner asserts that in making his credibility determination, "the ALJ complied with the controlling regulations and Fourth Circuit precedent and supported his finding with substantial evidence." (Document No. 15 at 6.) Though Claimant challenges the ALJ's credibility finding on the basis that he did not have money or a medical card, the Commissioner asserts that Claimant testified to having smoked one pack of cigarettes per day at an estimated cost of $52.70 per month. (Id. at 7-8 at n. 3.) Thus, the Commissioner asserts that Claimant had "disposable income for over-the-counter pain relievers or nominal payments at a clinic." (Id.)

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2006); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  Id. at 595.  When a

5

claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2006).  Additionally, the Regulations provide that:

> [we will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . .  Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2006).

>   SSR 96-7p repeats the two-step regulatory provisions:
>
>>   First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
>>   Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

>   Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence

of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. <u>Craig</u>, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. <u>Id.</u> at 595. Nevertheless, <u>Craig</u> does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which <u>Craig</u> prohibits is one in which the ALJ rejects allegations of pain <u>solely</u> because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms and credibility. (Tr. at 14-15.) The ALJ found, at the first step of the analysis, that Claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. at 15.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 15-17.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 15.)

The ALJ summarized Claimant's testimony in his decision, noting that Claimant originally injured his left arm at the age of nine as the result of a gunshot to his arm. (Tr. at 15, 196.) The ALJ further noted that on December 1, 2005, Claimant broke his left arm as a result of a four-wheeler

accident, which caused his inability to straighten his left arm all the way out or to pick up coins or button with his left arm. (Tr. at 15, 194-96.) The ALJ acknowledged Claimant's testimony that he experienced constant pain in his left arm. (Tr. at 15, 196.) The ALJ thus noted the nature and location of Claimant's pain, and further noted that he could not stand for long periods of time due to his arm injury or lift more than five pounds with his left arm. (Tr. at 15, 196, 199-200.) The ALJ noted that Claimant received conservative treatment with only a splint and did not take any pain medication other than aspirin. (Tr. at 16, 194-95, 200.) Regarding treatment, the ALJ noted that Claimant failed to keep a follow-up appointment at the Bond and Joint Surgeons, Inc., on January 25, 2006. (Tr. at 16, 159.)

The ALJ also acknowledged Claimant's testimony of minimal activities of daily living. (Tr. at 16-17, 198-202.) Claimant testified that his girlfriend helped him dress and perform household chores, but that he could wash his hair and shave. (Tr. at 16, 200-02.) He further testified that he watched a lot of television and had a good appetite. (Tr. at 198-99.) However, he reported no exercise plan, social activities, yard work, or household chores. (Tr. at 198-203.) He testified that he lost his driver's license after having been cited for driving without insurance. (Tr. at 197-98.)

A form Function Report, dated February 13, 2006, indicates that his girlfriend assisted him in getting dressed because it was difficult for him to put on his pants and button his clothing. (Tr. at 130-31.) Claimant testified at the administrative hearing that he was able to put on his pants if he sat down and could put on his coat, though it took him a while to get dressed. (Tr. at 201-02.) Claimant reported on the Function Report that he prepared frozen dinners on a weekly basis and that his girlfriend performed the household cleaning. (Tr. at 132.) He further reported that he shopped in stores once a month with his girlfriend for approximately one and one half hours. (Tr. at 133.)

Claimant indicated that he was able to pay bills, count change, and manage a checking or savings account. (Id.) He reported his hobbies and interests to include watching television and his social activities as talking on the phone throughout the day. (Tr. at 134.) Claimant reported that he did not experience any problems getting along with family, friends, neighbors, or anyone else. (Tr. at 135.) He reported that he was "great" at following written and spoken directions, getting along with authority figures, and was "good" in handling changes in routine. (Tr. at 135-36.) Claimant further reported that he feared "hurting my arm worse." (Tr. at 136.) On a form Personal Pain Questionnaire, dated February 15, 2006, Claimant reported that he experienced constant left arm and low back pain, for which he took "pain meds," which he identified as oxycodone. (Tr. at 138-41.) He described the pain as aching and throbbing in nature. (Tr. at 138-40.)

The ALJ also summarized the limited medical evidence of record. (Tr. at 15-17.) The medical evidence reveals that on December 21, 2005, Claimant reported at the emergency room at Raleigh General Hospital after having jumped off a four-wheeler and landed on his left arm. (Tr. at 16, 151.) An x-ray of Claimant's pelvis was negative and an x-ray of his lumbar spine demonstrated only mild lumbar vertebral lipping without evidence of any fractures. (Tr. at 15, 151-52.) The x-rays of Claimant's left shoulder and arm demonstrated a transverse fracture of the mid left humerus that was slightly comminuted with a deformity at the left elbow with a given history of prior fusion. (Tr. at 15, 151.) It was noted that extensive buckshot projected over much of Claimant's left upper extremity. (Id.) Claimant reported that when he was ten years old, he had been shot in the left arm and underwent multiple surgical procedures. (Tr. at 153.)

Claimant was transferred from Raleigh General Hospital to the emergency room at Charleston Area Medical Center on December 22, 2005, by personal vehicle. (Tr. at 16, 156-58.)

Dr. Adkins and Dr. Kwei noted that Claimant's only injury was to his left arm and that Claimant reported dull aching pain in the mid portion of his left humerus. (Tr. at 16, 156.) They further noted that Claimant was unable to extend his left forearm secondary to contractures from previous injuries and that his elbow was fused. (Id.) On examination, Claimant had some mild swelling of his fingers of the left hand but had no neurosensory deficit or tenderness of the left shoulder. (Tr. at 16, 157.) Claimant's back was not tender. (Id.) Claimant was diagnosed with a mid shaft left humerus fracture nondisplaced, and was discharged home with Lortab as needed for pain and Motrin or Tylenol for mild pain. (Id.) Claimant's left arm was placed in a left coaptation splint, and he was instructed to return to the emergency room for increased pain, swelling, or numbness. (Id.) He further was instructed to follow up with Dr. Adkins. (Id.)

A treatment note from the Bone & Joint Surgeons, Inc., dated January 9, 2006, indicated that Claimant presented for evaluation of his left humerus. (Tr. at 16, 159.) It was noted that Claimant had chronic problems with his left upper extremity. (Id.) On examination, it was noted that Claimant's fracture was "reasonably well aligned, certainly not perfectly but he had a very limited motion of this extremity anyway." (Id.) Despite the limited motion, surgical procedures were not recommended, he was placed in a coaptation splint, and was instructed to return for a further examination in three weeks. (Id.) A treatment note dated January 25, 2006, however, indicated that Claimant failed to attend his follow-up appointment. (Id.)

On March 1, 2006, Dr. Marcel Lambrechts, M.D., completed a form Physical Residual Functional Capacity Assessment on which he opined that Claimant was capable of performing work at the medium level of exertion, with postural limitations and an avoidance of concentrated exposure to vibration. (Tr. at 17, 163-70.) Dr. Lambrechts opined that Claimant's impairment was durational

11

and that he was expected to recover within twelve months. (Tr. at 17, 168.) He acknowledged that Claimant was right-handed but noted that Claimant had maintained employment that required fine manipulations, despite the previous damage to his left upper extremity. (Tr. at 17, 170.) On July 10, 2006, Dr. Uma Reddy, M.D., affirmed Dr. Lambrecht's opinion as written. (Tr. at 17, 171.)

The ALJ concluded that Claimant's allegations of "extreme limitations and chronic pain [were] not supported by the objective findings of record and therefore indicate[d] that he [was] only partially credible." (Tr. at 15.) The ALJ first noted that with respect to Claimant's testimony that he could not walk or stand for prolonged periods of time, there were no objective findings, or even treatment records, to support his allegation. (Id.) The examination of Claimant's right upper and bilateral lower extremities at CAMC were unremarkable. (Tr. at 16.) With respect to Claimant's back, as discussed above, x-rays of Claimant's lumbar spine revealed only mild lumbar vertebral body lipping, which the ALJ found inconsistent with Claimant's allegations of disabling back pain. (Tr. at 15-16.)

Regarding Claimant's left upper extremity, the ALJ acknowledged his severe impairment but noted that his failure to attend a follow-up appointment, together with his failure to take any pain medication other than aspirin was inconsistent with Claimant's alleged extreme limitations. (Tr. at 16.) Claimant was treated conservatively with only a splint. (Id.) Furthermore, despite Claimant's injuries to his left upper extremity, the ALJ noted that Claimant had held jobs in the past that required fine manipulation skills. (Id.) Most importantly, the ALJ noted that Claimant was right-handed and that Claimant testified that his past work as a telemarketer did not require use of his left arm. (Id.)

Based on the foregoing, the ALJ concluded that Claimant's restricted activities were not

supported by the evidence of record and found that Claimant was not fully credible in his allegations. (Tr. at 17.) In so finding, the ALJ accorded great weight to the opinion of the state agency physician, Dr. Lambrechts, which was affirmed by Dr. Reddy, that Claimant was capable of performing work at the medium level of exertion. (Id.)

In view of all the evidence of record, it is clear that the ALJ properly considered the factors under 20 C.F.R. § 404.1529(c)(4) and 416.929(c)(4), in finding Claimant not entirely credible. Claimant asserts that the ALJ improperly based his credibility assessment on the lack of objective medical evidence because Claimant was not able to afford treatment due to the lack of medical insurance or a medical card. Claimant properly points out that the Commissioner may not deny a claimant benefits on the basis of a failure to seek treatment due to a lack of funds. See Mickles v. Shalala, 29 F.3d 918, 929-30 (4th Cir. 1994); Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986); Social Security Ruling 82-59, 1982 WL 31384, *4. Social Security Ruling 82-59 delineates the circumstances in which the Commissioner must excuse a claimant's failure to follow prescribed treatment, in part, as follows:

> 4. The *individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable.* Although a free or subsidized source of treatment is often available, the claim may be allowed where such treatment is not reasonably available in the local community. All possible resources (e.g., clinics, charitable and public assistance agencies, etc.), must be explored. Contacts with such resources and the claimant's financial circumstances must be documented. Where treatment is not available, the case will be referred to VR.

The record however, does not indicate that Claimant's physical condition reached the severity where he was required to seek further emergency treatment for which he was denied because he could not afford it, or that he sought other forms of medical treatment and was denied

due to the lack of funds. As of February 15, 2006, Claimant was taking oxycodone for pain relief. (Tr. at 138-41.) Claimant did not testify or otherwise indicate that he sought additional pain medication which he could not afford. Furthermore, as the Commissioner points out, Claimant was able to afford a nicotine habit at a pack of cigarettes per day. Notwithstanding Claimant's alleged inability to afford medical treatment or medications for his left upper extremity, the ALJ properly found that the evidence of record did not support Claimant's allegations. Furthermore, based in part on Claimant's testimony, the ALJ properly found that Claimant was capable of performing his past relevant work as a telemarketer, which did not require use of his left arm. Accordingly, any error that the ALJ may have committed in commenting on the lack of medical treatment in view of Claimant's financial status, was harmless.    Accordingly, the Court finds that the ALJ properly considered Claimant's subjective allegations and that his pain and credibility assessment is supported by substantial evidence.

2. Duty to Develop the Record.

Claimant further argues that the ALJ failed to develop the record properly in the instant case. (Document No. 14 at 9-10.) Specifically, Claimant asserts that the ALJ should have developed the record "to determine whether or not his back pain and depression did in fact have an impact upon his ability to work." (Id. at 10.) Claimant asserts:

> The ALJ just merely ignores these issues. The ALJ has a duty to properly develop the record and to give the plaintiff a fair hearing. A fair hearing was not given to the plaintiff in this instant. The ALJ did not even acknowledge any where in his decision that the plaintiff was having these problems.

(Id.) The Commissioner asserts that "the ALJ adequately considered the evidence and the record was complete enough for the ALJ to make an informed decision." (Document No. 15 at 8.) The Commissioner asserts that the hospital records failed to show any injury other than to Claimant's

14

left arm, and that x-rays of Claimant's back revealed only mild lumbar vertebral body lipping, rather than a disabling condition. (Id. at 9.) Regarding Claimant's alleged mental impairments, the Commissioner asserts that "it is unlikely that [Claimant] experienced intellectual deficiencies as he has a nine-year work history that included semi-skilled work and he testified that he never took special education classes." (Id.) Furthermore, the Commissioner notes that a hospital mental status exam was unremarkable. (Id.)

The Court finds Claimant's argument on this point unavailing. Although an ALJ does have a responsibility to help develop the evidence, it is Claimant's responsibility to prove to the Commissioner that he is disabled. 20 C.F.R. § 404.1512(a) (2006).[1] Thus, Claimant is responsible

---

[1] In *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986), the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." *Id.* The Court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. *Id.*

It is nevertheless Claimant's responsibility to prove to the Commissioner that she is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a) (2006) (stating that "in general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s).") Thus, the claimant is responsible for providing medical evidence to the Commissioner showing that she has an impairment. *Id.* §§ 404.1512(c), 416.912(c). The Regulations provide that: "You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled." §§ 404.1512 (c); 416.912(c)(2006). In *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), the Supreme Court noted:

The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . . If the process ends at step two, the burden of proof never shifts to the Secretary. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

*Bowen v. Yuckert*, 482 U.S. at 146, n. 5; 107 S.Ct. at 2294, n. 5 (1987). Thus, although the ALJ has

for providing medical evidence to the Commissioner showing that he has an impairment.  Id. §
404.1512(c). Although the ALJ has a duty to develop the record fully and fairly, he is not required
to act as Claimant's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). It appears that
Claimant has been represented by counsel in this case throughout the proceedings. Additionally,
Claimant had several opportunities to submit additional evidence at the initial and reconsideration
stages of his application, and when requesting a hearing before the ALJ. Counsel failed to represent
to the ALJ at the administrative hearing that there was outstanding evidence aside from Claimant's
testimony that the ALJ needed to complete the record. (Tr. at 190.) During the hearing, Claimant
testified that he had no problems walking or standing, but that he could not stand too long because
his left arm would hurt. (Tr. at 199.) Claimant however, testified that he was depressed. (Tr. at 203.)
As the Commissioner points out, the medical evidence of record fails to reference any back or
mental problems. The x-rays of Claimant's lumbar spine on December 21, 2005, when he was
examined in the emergency room after his accident, demonstrated only mild lumbar vertebral body
lipping and no fractures. (Tr. at 152.) The medical records do no even reflect any complaints of back
pain or mental problems. Claimant's form Disability Report - Appeal, reflects Claimant's statement
of new mental limitations to include "depression developing." (Tr. at 120.) However, there are no
further reports of depression or evidence that Claimant sought treatment for depression or back pain
and was denied due to his financial situation.

---

a duty to develop the record fully and fairly, he is not required to act as the claimant's counsel. *Clark
v. Shalala*, 28 F.3d 828, 830-31 (4th Cir. 1994). Claimant bears the burden of establishing a *prima
facie* entitlement to benefits.  *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A.
§ 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such
medical and other evidence of the existence thereof as the Commissioner of Social Security may
require.")  Similarly, Claimant "bears the risk of non-persuasion." *Seacrist v. Weinberger*, 538 F.2d
1054, 1056 (4th Cir. 1976).

Accordingly, in the absence of any indication that Claimant had back and mental problems, the Court finds that the ALJ did not breach his "duty to investigate the facts and develop the arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103, 111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000). The evidence of record regarding Claimant's conditions was sufficient from which the ALJ could determine Claimant's limitations. As such, the ALJ did not err in failing to develop the medical evidence regarding Claimant's minimal complaints of back pain and depression.

Upon review of the evidence of record and the ALJ's decision, the Court finds that the ALJ's consideration of Claimant's impairments is consistent with all applicable standards and Regulations, and his conclusions are supported by substantial evidence. Contrary to Claimant's argument, the ALJ did not consider only part of the evidence of record. Claimant's argument therefore, is without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment (Document No. 14.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 15.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 30, 2009.

R. Clarke VanDervort
United States Magistrate Judge

17